# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JESUS AGUIAR, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )   Case No.: 2:19-cv-00442-JHE |
| ROBERTO'S USED CARS, INC, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER[1]

On April 5, 2019, Defendants Roberto's Used Cars, Inc., Maria Catano, Jose Guadalupe Catano, Jamie Perez, and Alejandro Reynosa (collectively, the "Defendants") moved to dismiss this Fair Labor Standards Act ("FLSA") action pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 7). On April 19, 2019, Plaintiff Jesus Aguiar ("Aguiar" or "Plaintiff") moved to strike exhibits to the motion to dismiss or, in the alternative, convert the motion to one for summary judgment and allow discovery prior to ruling upon it. (Doc. 11). The same day, Aguiar filed a separate response to the motion, again alternatively requesting discovery. (Doc. 12).

On June 17, 2019, the undersigned entered a memorandum opinion denying the motion to dismiss in part, but converting it to a motion for summary judgment on the sole issue of whether Roberto's Used Cars' gross revenue was sufficient for enterprise coverage under the FLSA. (Doc. 19). The undersigned allowed the parties to engage in additional discovery before supplemental

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.

briefing on that issue. (*Id.*). Defendants have now filed their supplemental brief, (doc. 31), and Aguiar has filed a response in opposition, (doc. 35). Defendants have not filed a reply.

## I. Legal Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324. (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiff's favor when sufficient competent evidence supports Plaintiff's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence).

However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)).  Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. Summary Judgment Facts

Aguiar worked as a laborer for Roberto's Used Cars, a car repair shop and dealership located in Columbiana, Alabama. (Doc. 1 at ¶¶ 3, 13, 26).  The Catanos own Roberto's Used Cars, and Perez and Reynosa manage and operate the shop.  (*Id.* at ¶¶ 14-17).  Over the eleven years that Aguiar worked for Roberto's Used Cars, he was required to work approximately sixty-one hours per week, but was never paid overtime; instead, Defendants paid him a flat weekly rate in cash. (*Id.* at ¶¶ 23, 29-33, 37).  Aguiar alleges Defendants' actions violate the overtime compensation provisions of the Fair Labor Standards Act ("FLSA").  (*Id.* at 40-43).

## III. Analysis

The sole issue before the court in this converted motion for summary judgment is whether Roberto's Used Cars is covered by the FLSA.[2]  An employer can be subject to the overtime

---

[2] In their motion, Defendants list as "undisputed facts" their claims that Plaintiff did not work as many hours as he claimed.  (Doc. 31 at 4).  The memorandum opinion on Defendants' motion to dismiss addressed and resolved this argument for the purposes of this motion:

> Defendants do not directly challenge Aguiar's complaint's facial sufficiency. Instead, their attack on the complaint is that an alternative explanation exists for Aguiar's presence at the shop during the hours he says he worked.  This does not support dismissal under Rule 12(b)(6), because the court takes the facts alleged in

provisions of the FLSA in one of two ways: individual coverage or enterprise coverage. *See* 29 U.S.C. § 207(a)(1). "Employers fall within the FLSA's enterprise coverage section if they (1) have employees engaged in commerce or in the production of goods for commerce, or have employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and (2) have at least $500,000 of annual gross volume of sales made or business done." *Hurst v. Youngelson*, 354 F. Supp. 3d 1362, 1382 (N.D. Ga. 2019) (quoting *Polycarpe v. E & S Landscaping Service, Inc.*, 616 F.3d 1217, 1220 (11th Cir. 2010)) (internal alterations and quotation marks omitted); 29 U.S.C. § 203(a)(1)(A). To qualify for individual coverage, an employee can show he was "engaged in commerce," meaning he must demonstrate he was "directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, *e.g.,* transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.,* regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006); 29 U.S.C. § 207(a)(1).

---

the complaint as true. *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012) (citation omitted). Defendants' arguments are not well taken, and their motion is due to be denied on this basis.

(Doc. 19 at 4). To the extent Defendants now argue they are due summary judgment on this claim, they have cited no evidence at all, much less evidence that supports that their allegations are undisputed.

### A. Enterprise Coverage

In his complaint, Aguiar alleges Defendants are subject to enterprise coverage. (Doc. 1 at ¶ 21). Because this is the only theory that clearly appears in the complaint, this is the sole avenue on which Defendants attack the FLSA's applicability. Defendants have stipulated they are engaged in interstate commerce, (doc. 35-2 at 28-29 (27:21-28:2)), so the only question is whether RCU's gross sales exceeded $500,000 for each year in which Aguiar claims an FLSA violation.

Between their motion to dismiss and their supplement, Defendants rely exclusively on their reports of gross sales to the State of Alabama (in the motion to dismiss) and in federal income tax returns (in the motion for summary judgment). The undersigned discussed the state sales returns in the memorandum opinion on the motion to dismiss:

> Defendants' evidentiary submissions consist of monthly state sales returns. For 2018, Defendants attach the sales returns from January, February, March, April, May, June, July, August, September, and October, but omit the returns from November and December. (Doc. 7-1 at 1-10). The total reported sales are $474,980. (*Id.*). For 2017, Defendants include returns for the entire year. (*Id.* at 11-22). The total reported sales are $330,900. (*Id.*).

(Doc. 19 at 5). As noted in the memorandum opinion, this evidence is incomplete for 2018. Roberto's Used Cars' federal tax return for 2018 sheds more light on this, indicating Roberto's Used Cars' gross sales for that year were $503,202—sufficient for enterprise coverage, contradicting Defendants' contention in their motion to dismiss.[3] (Doc. 32-3 at 1). The returns for 2016 and 2017 show gross sales of $323,592 and $431,525, respectively. (Doc. 32-1 at 1; doc.

---

[3] Defendants admit in their supplement that this is sufficient for enterprise coverage, although they characterize it as "surpass[in]g by a slight amount … the $500,000 [enterprise coverage] threshold …." (Doc. 31 at 5).

5

32-2 at 1). So at least facially, the evidence supports that Roberto's Used Cars' gross sales are insufficient to support enterprise liability for any year but 2018.

That said, Aguiar points out discrepancies between the income tax returns and other evidence. Specifically, Roberto's Used Cars' 2018 federal tax return (which, as stated above, supports enterprise liability for that year) indicates Roberto's Used Cars paid out $35,000 in salaries and wages. (Doc. 32-3 at 1). But Defendant Maria Catano, Roberto's Used Cars' 30(b)(6) representative and the person responsible for providing the information used on the tax returns, testified the four individuals on the payroll that year—Aguiar, Jose Granados, and Defendants Jaime Perez and Jose Catano—earned a total of $111,900 in 2018.[4]  (Doc. 35-2 at 45-49 (44:12-45:1, 46:3-48:10)). Maria Catano admitted this discrepancy could have resulted from a failure to include cash payments to employees in the tax returns, which would have meant the returns were incorrect. (*Id.* at 50 (49:3-22)). Maria Catano conceded this could also be true for 2017, a year in which Roberto's Used Cars reported $38,600 in salaries and wages, (doc. 32-2 at 1). (Doc. 35-2 at 50-52 (49:23-51:2)). According to Maria Catano's testimony, other years also featured low reported salary and wage numbers: $8,500 in 2011, $6,300 in 2012, and $9,050 in 2013. (*Id.* at 54 (53:11-22)). Aguiar also includes a copy of Roberto's Used Cars' 2015 federal tax return, in which it reported no payments for salaries or wages at all. (Doc. 35-5).

Although the discrepancies Aguiar identifies relate to unreported expenses and not income, they call into question whether the tax returns Roberto's Used Cars has produced for 2017 and 2018 are accurate on the whole. While Aguiar has not specifically pointed to anything about

---

[4] Maria Catano's compensation is listed separately on the returns as "compensation of officers." (Doc. 35-2 at 47 (46:1-8)).

Roberto's Used Cars' 2016 tax return that would call its accuracy into question, a reasonable inference is that inaccurate tax returns from 2011, 2012, 2013, 2015, 2017, and 2018 demonstrate a pattern that could be applied to 2016 as well.  Accordingly, whether or not Roberto's Used Cars' gross revenue is actually supported by the tax returns is a factual question for the jury.  *See Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 596 (1993)) ("[T]he accuracy of the actual evidence is to be tested before the jury with the familiar tools of the 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'").  Since this is the only evidence Roberto's Used Cars relies upon to dispute enterprise coverage, its motion for summary judgment is due to be denied.

### B. Individual Coverage

Aguiar's response to the motion for summary judgment argues he falls under the individual coverage prong of FLSA coverage as well. (Doc. 35 at 9-11).   However, Aguiar does not specifically invoke individual coverage in his complaint.  The closest Aguiar comes is to state he is "subject to the full protection of the Fair Labor Standards Act." (Doc. 1 at ¶ 12).  In general, a party may not assert new theories of liability in response to summary judgment. *Cruz v. Advance Stores Co*., 842 F. Supp. 2d 1356, 1360 (S.D. Fla. 2012).  Instead, "the proper procedure for [a plaintiff] is to amend [his] complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). Since a factual question precludes

summary judgment as to enterprise coverage, it is unnecessary to explore whether Aguiar's complaint supports individual coverage.[5]

### IV. Conclusion

For the reasons stated above, Defendants' motion for summary judgment, (docs. 7 & 31), is **DENIED**. Plaintiff's motion for a hearing (doc. 36) is also **DENIED**. Defendants are **DIRECTED** to answer the complaint by **May 11, 2020**.

DONE this 27th day of April, 2020.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

---

[5] Of course, Aguiar is free to move for leave to amend his complaint to include his individual coverage theory.